### WECOLINE PRODUCTS, Inc., v. CARMAN & CO., Inc.

### No. 7206.

Circuit Court of Appeals, Third Circuit.

Feb. 7, 1940.

R. E. & A. D. Watson, of New Brunswick, N. J., for appellant.

McDermott, Enright & Carpenter, of Jersey City, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., and Charles B. Collins and Harter F. Wright, both of New York City, on the brief), for appellee.

Before BIGGS, MARIS, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

The appellant, Wecoline Products, Inc., and the appellee, Carman & Company, Inc., possessed adjacent plants at Boonton, New Jersey, and agreed to pool certain plant facilities. Wecoline agreed to furnish Carman with electricity and Carman agreed to pay for it in accordance with the provisions of paragraph 14 of their contract, which stated: "Wecoline agrees to furnish * * * all the requirements of Carman with respect to electricity * * * and Carman agrees that so long as said service is adequate and uninterrupted, it will take and purchase from Wecoline * * * and will pay Wecoline therefor within ten days after the expiration of each month of such use, at the prevailing rates charged for equivalent service by the public utility company serving the Town of Boonton, New Jersey.".

By later agreement the parties made certain rearrangements as to the tenancies of their respective plants but reaffirmed the provisions of paragraph 14 of the earlier contract.

Wecoline supplied electric power to Carman during the period from July 1, 1933 to July 31, 1937. During the first few months of this period Wecoline generated a part of the electricity used by it and by Carman. Wecoline purchased the balance of the electricity required from Jersey Central Power & Light Company. As to the remainder of the indicated period, Wecoline did not generate electricity but purchased it from the Jersey Power Company. The contract between Wecoline and the Power Company provided that the Power Com-

pany should furnish Wecoline with electric power at a given rate under a "Large Power" schedule known as Schedule P-3. Wecoline proceeded to charge Carman its proportionate part of the bills rendered to Wecoline monthly by the Power Company; that is to say, Wecoline charged Carman in proportion as the amount of power consumed by Carman was to the total amount consumed by Wecoline and Carman. It will be observed that this method of charging was contrary to the provisions of paragraph 14 of the contract. An employee of Wecoline and an employee of Carman together read the meters month by month and the sum due from Carman to Wecoline was determined by the proportion calculation referred to. Wecoline billed Carman each month and the bills were promptly paid. This course was pursued by the appellant and the appellee up to and through the month of September, 1936.

In the fall of 1936, about October, Carman decided that it would discontinue its operations at Boonton and informed Wecoline of this. Carman actually carried on its operations until about July, 1937, but from about that time when Wecoline learned that Carman was going to discontinue its business at Boonton and until May 21, 1937, Wecoline did not bill Carman for power. Upon May 21, 1937, however, Wecoline sent Carman a statement setting forth charges for electric power totalling $6,-817.05. The statement included billing for the period commencing on October 1, 1936 and ending on April 30, 1937 calculated at other than the proportion formula. Wecoline also submitted a recalculation at the new rate of the bills previously rendered by Wecoline to Carman and paid by Carman under the proportion formula.

Other calculations and recalculations were made by Wecoline as to sums which it claimed were due from Carman to it for supplying electric power. These calculations and recalculations were based upon the Rate Schedule P-3, heretofore referred to. Examination of Schedule P-3 shows that it was adapted for the calculation of charges upon "Large Power". It provided a minimum monthly charge and contained a power factor clause which provided that the rates set forth in the tariff were based upon the maintenance by the customer of an average designated power factor, with demand charge and energy charge provisions which substantially influenced the rates.

The appellee contends that the express provisions of paragraph 14 of the contract had been subjected to a novation by the acts and conduct of the parties; that the proportion formula had been substituted for the charges specified in the contract; and that there was ample evidence to go to the jury upon this question. Wecoline for its part contends that there was no evidence of an intention of the parties to effect a novation of the contract and that therefore a verdict should have been directed in its favor.

It is the settled law of New Jersey that the existence of an intention to effect a novation need not be shown by express words but may be implied from facts and circumstances, including the conduct of the parties. Sixteenth Ward Bldg. & Loan Ass'n v. Reliable Loan, Mortgage & Security Company, 125 N.J.Eq. 340, 5 A.2d 753, 755, 756.

In the case at bar we cannot believe that the parties ever intended to be governed in accordance with the provisions of paragraph 14 of the contract. It is true that the feed line of Jersey Central Power and Light Company into the Wecoline plant was metered and that the power from this line was distributed by four other lines. While one of these lines was not metered, the other three were. Consequently the consumption of electricity on the unmetered line was readily ascertainable. It is also true as the appellant contends that the actual amount of electrical energy distributed to the Carman plant was capable of being ascertained by a simple arithmetical calculation, but the demand of the appellant in the case at bar is based upon a calculation made by taking the kilowatt hours from those meters, metering current to Carman, but without regard to demand charge. In other words, Wecoline's contention amounts to nothing more than that it should be paid by Carman at the meter rates without the alleviation of the reducing factor of the demand charge. This would permit the greater part of the cost of the electricity consumed by the two plants to be thrown upon Carman. If Wecoline's theory of computation be pursued it is clear that Wecoline would pay little for its electricity and Carman much.

It follows that the provisions of paragraph 14 of the contract were inoperable and that the parties in pursuing the proportion method or formula of allotting

charges were pursuing the only course which as a practical matter could serve to allocate charges between the appellant and the appellee. Doubtless the jury had this in mind when it rendered a verdict for the appellee upon this issue. When it is also borne in mind that the proportion formula was used by the parties for months, Wecoline itself submitting the bills to Carman and receiving payment without objection and that in its letter of October 9, 1934 Wecoline informed Carman that it was charging itself with the same rate per kilowatt hour as it was charging Carman, it is difficult to see how the jury could have reached a different verdict. Clearly the trial court would have been in error if it had not submitted the question of the creation of a novation to the jury.

Carman admitted a liability in the sum of $2,416.39 for unpaid charges for electricity computed by the proportion method. A verdict in this sum was found by the jury in favor of Wecoline and judgment entered upon that verdict.

The judgment is affirmed.